## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

JOE FRATTAROLA and LUCIANO CARBONE, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

    v.

PROSEGUR SECURITY USA INC.,

                  Defendant.

Case No. 7:23-cv-00137-CS

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## UNOPPOSED MOTION FOR FINAL APPROVAL OF
## <u>CLASS AND COLLECTIVE ACTION SETTLEMENT</u>

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND................................................................... 2

    I.     Factual Allegations ................................................................................................ 2

    II.    Overview of Litigation and Settlement Negotiations ............................................. 2

SUMMARY OF SETTLEMENT TERMS.................................................................................. 5

    I.     Class and Collective Definition .............................................................................. 5

    II.    Monetary Settlement Terms.................................................................................... 6

    III.   Allocation Plan....................................................................................................... 7

    IV.   Programmatic Relief .............................................................................................. 8

    V.    Releases for Proposed Class Members ................................................................... 9

    VI.   Attorneys' Fees and Costs and Service Awards ..................................................... 9

    VII.  Notice of Settlement to Class Members.................................................................. 10

ARGUMENT .............................................................................................................................. 13

    I.     Judicial Policy Favors Settlement........................................................................... 13

    II.    The Rule 23 Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects. .................................................................................... 13

          A.    The Settlement Is Procedurally Fair. ................................................... 14

          B.    The Settlement Is Substantively Fair. .................................................. 15

               i.     Grinnell Factors 1, 3, 4, 5, 6, 7, 8 and 9........................................ 16

               ii.    Grinnell Factor 2. ......................................................................... 18

               iii.   Rule 23(e)(2) Additional Considerations...................................... 19

          C.    The Settlement Notice Satisfied Rule 23. ................................................. 21

          D.    Final Certification of the Settlement Class under Rule 23(b)(3) is Appropriate. ..................................................................................... 22

    III.   The FLSA Settlement Should Be Approved.......................................................... 23

A.      The Settlement Is Fair and Reasonable and Should Be Approved. .......... 24

CONCLUSION.......................................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................................ 17

*Banford v. Entergy Nuclear Operations, Inc.*,
  649 F. App'x 89 (2d Cir. 2016) ...................................................................... 25

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................... 23

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ...................................................................... 26, 26

*Chevalier v. Staffpro, Inc.*,
  No. 20 Civ. 7006, 2021 U.S. Dist. LEXIS 46965 (S.D.N.Y. Mar. 12, 2021) ...................... 24

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) .............................................................. 13, 15, 18

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ...................................................................... 13, 16

*DeLeon v. Wells Fargo Bank, N.A.*,
  No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261 (S.D.N.Y. May 7, 2015) ........................ 14

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ........................................................................ 15

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) .......................................................... 23, 24

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) .................................................................................. 23

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000) ......................................................................... 13

*Grant v. Global Aircraft Dispatch, Inc.*,
  223 A.D.3d 712 (N.Y. App. Div. 2d Dep't 2024) ................................................... 4

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......................................................... 14, 15

*Henry v. Little Mint, Inc.*,
    No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) ......................... 25

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ....................... 14

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................................... 20

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009) .................................................................................................. 14

*Moses v. N.Y. Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .............................................................................................. 13, 14

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................... 13

*Reyes v. Altamarea Grp., LLC*,
    No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132 (S.D.N.Y. Dec. 22, 2010) ...................... 21

*Rodriguez v. It's Just Lunch Int'l*,
    No. 07 Civ. 09227, 2020 U.S. Dist. LEXIS 228270 (S.D.N.Y. Mar. 2, 2020) ...................... 19

*Seijas v. Republic of Arg.*,
    No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398 (S.D.N.Y. Apr. 27, 2017) .......................... 19

*Siler v. Landry's Seafood House – N.C., Inc.*,
    No. 13 Civ. 587, 2014 U.S. Dist. LEXIS 90088 (S.D.N.Y. June 30, 2014) .......................... 24

*Soler v. Fresh Direct, LLC*,
    No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023) ........................ 22

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144 (S.D.N.Y Dec. 21, 2010) ....................... 26

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................................... 13, 20

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ................................................................................... 19

**FEDERAL STATUTES**

29 U.S.C. § 216(b) ...................................................................................................................... 23

**FEDERAL RULES**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**OTHER AUTHORITIES**

FJC, Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide ........................................................................................ 21

William B. Rubenstein, Newberg on Class Actions § 13.44 (5th ed. 2018) ................................ 24

## PRELIMINARY STATEMENT

Plaintiffs Joe Frattarola and Luciano Carbone ("Plaintiffs"), on behalf of themselves and others similarly situated, seek final approval of their proposed settlement with Defendant Prosegur Security USA Inc. ("Prosegur" or "Defendant"), resolving claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

The proposed $2,500,000 Settlement is fair, reasonable, and adequate, and satisfies all of the criteria for final approval. The parties reached a settlement after a year and a half of contested litigation, including a 216(b) motion, the exchange of discovery, and two mediation sessions, plus months of additional settlement negotiations. The Settlement provides backpay and penalties, as well as policy changes addressing the core legal claims in the litigation. This is an excellent result for the Plaintiffs and the proposed Class and Collective in the face of significant risk to a class-wide recovery. The response from Class and Collective Members about the Settlement has been exceedingly positive. Six hundred and ninety-five (697) of the 980 Additional Collective Members chose to submit claim forms and participate in the Settlement and none of the 1,004 Opt-out Class Members chose to opt out. *See* Declaration of Molly A. Brooks ("Brooks Decl."), Ex. 4 (Declaration of Makenna Snow of ILYM Group, Inc. ("Snow Decl.")) ¶¶ 8. Further, no Class Members have submitted objections to the Settlement. Consistent with the Court's ruling in December 2024 preliminarily approving the Settlement, ECF No. 77, the Court can confirm that the Settlement is "fair, reasonable, and adequate."

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual Allegations

Prosegur Security USA, Inc. is a privately-owned company that provides security services nationwide to businesses, including the healthcare, construction, retail, and transportation industries.  ECF No. 1 (Compl.) ¶ 1.  Plaintiffs and the proposed Class and Collective Members are current and former security officers, wheelchair pushers, and baggage handlers ("Security Officers") who worked for Prosegur in New York.

Plaintiffs allege that Prosegur violated the FLSA and the NYLL by failing to (1) pay Security Officers for all regular and overtime hours worked in violation of the FLSA and NYLL; (2) provide Security Officers with adequate wage notices and wage statements in violation of the NYLL; (3) pay Security Officers on a weekly basis in violation of the NYLL and FLSA; and (4) pay Security Officers for accrued vacation and sick days in violation of the NYLL.  Prosegur denies these allegations and denies any wrongdoing, liability or damages.  It is Prosegur's position that it properly compensated Plaintiffs and other Security Officers and complied with all applicable federal and state law with respect to its Security Officers.

### II.    Overview of Litigation and Settlement Negotiations

Plaintiffs filed this class and collective action on behalf of themselves and other Security Officers on January 6, 2023.  ECF No. 1.  After Plaintiffs filed their Complaint, Defendant's counsel reached out to Plaintiffs to propose that the parties consider attending mediation to explore an early resolution.  Brooks Decl. ¶ 13.  Plaintiffs agreed, and the parties engaged Anne Marie Estevez, Esq., a well-respected mediator with significant experience involving employment law disputes.  *Id.*  Prior to the first mediation with Ms. Estevez, Prosegur produced a class list and pay and hours data for Class Members who worked for Prosegur at Westchester

2

Medical Center.  *Id.* ¶ 14.  The parties attended mediation on June 26, 2023, but were unable to come to an agreement at that time.  *Id.* ¶ 15.

Prosegur answered on June 8, 2023.  ECF No. 8 (Answer).  Following the Court's initial case conference on September 15, 2023, the parties proceeded with initial discovery.  Brooks Decl. ¶ 16.  Plaintiffs served initial disclosures on September 21, 2023, and on September 29, 2023, the parties each served their first sets of Requests for Production of Documents and Interrogatories and Defendant served its initial disclosures.  *Id*.

In October 2023, the parties agreed to attend a second mediation session with Ms. Estevez.  *Id.* ¶ 17.  The parties requested a stay of pending deadlines on October 13, 2023, ECF No. 21, and the Court granted the parties' request in part, extending all existing deadlines by 30 days.  ECF No. 22.  The parties attended a mediation with Ms. Estevez on November 13, 2023, and while the parties were unable to come to an agreement at the time, Plaintiffs' Counsel and Defendant's Counsel continued to negotiate in the subsequent months.  *Id.* ¶ 17.

Following the second mediation, Plaintiffs responded to Defendant's discovery requests on December 13, 2023, and produced responsive documents on a rolling basis.  *Id*. ¶ 18. Defendant served responses on December 22, 2023, and made an initial document production. *Id*.  The parties also negotiated a Stipulation Concerning the Production of Electronically Stored Information, ECF No. 26, which the Court so ordered on December 11, 2023, ECF No. 27. Plaintiffs raised certain discovery disputes to the Court's attention, and the Court ordered Prosegur to timely complete its document searches and productions at the conference on March 8, 2024, and extended the discovery scheduled to accomplish that production and complete depositions.  Brooks Decl. ¶ 18; ECF No. 40.

On January 31, 2024, Plaintiffs filed their Motion for Court-Authorized Notice pursuant to Section 216(b) of the Fair Labor Standards Act.  ECF No. 29.  On March 7, 2024, the Court granted Plaintiffs' motion and permitted notice to be sent to Security Officers who worked for Prosegur in New York since January 6, 2020.  ECF No. 37.  On April 16, 2024, Plaintiffs sent notice to 3,863 putative collective members, and 1,344 individuals joined the case before the deadline of June 15, 2024.  Brooks Decl. ¶ 12.

On April 12, 2024, Defendant requested a stay of all deadlines pending the appellate review of *Grant v. Global Aircraft Dispatch, Inc*., 223 A.D.3d 712 (N.Y. App. Div. 2d Dep't 2024) by the New York Court of Appeals.  ECF No. 41.  Plaintiffs opposed the stay, ECF No. 44, and the Court denied that motion on April 30, 2024.  ECF No. 45.

The parties continued to negotiate a potential settlement throughout the first half of 2024, ultimately coming to an agreement on the terms of the Settlement on June 17, 2024.  Brooks Decl. ¶ 19.  The parties then negotiated the Settlement Agreement and Release and fully executed the Agreement on August 7, 2024.  *Id.*

Plaintiffs filed their Motion for Preliminary Approval on August 23, 2024, ECF No. 68, and the Court held a hearing on September 30, 2024.  In response to questions raised by the Court at that hearing, the parties filed a supplemental brief addressing the Class and Collective definitions, the Court's authority to alter a class definition to be broader than the definition alleged in the Complaint, and the Settlement's substantial recovery in light of litigation risks on October 30, 2024. ECF No. 72.  Plaintiffs filed a second supplemental brief addressing the risks on the Class and Collective's claims, and the corresponding potential value of their claims on December 23, 2024.  ECF No. 75.  The Court granted preliminary approval on December 30, 2024.  ECF No. 77.

## SUMMARY OF SETTLEMENT TERMS[1]

### I.    Class and Collective Definition

The following groups of current and former Prosegur employees are defined as Class and

Collective Members by the Settlement Agreement[2]:

    a.  **Class Members** includes current and former employees employed by Prosegur in New York from January 1, 2020 through June 17, 2024 as Security Officers at Prosegur's Westchester Medical Center location or as baggage handlers or wheelchair pushers in Prosegur's LaGuardia airport or JFK airport locations. Class Members will not need to submit a Claim Form to participate in the Settlement, and unless they choose to opt-out, will automatically become Participating Class Members and receive a Settlement Check.  Ex. 1 ("Settlement Agreement") § 1.6.

    b.  **Additional Collective Members** includes individuals who submitted timely Consent to Join Forms, and who did not work at Defendant's Westchester Medical Center location in a Security Officer position or its LaGuardia airport or JFK airport locations in a baggage handler, and/or wheelchair pusher positions. Each Additional Collective Member is required to submit a Claim Form in order to become a Participating Additional Collective Member and receive a Settlement Check.  *Id.* § 1.1.

    c.  **Outstanding Collective Members includes** individuals who received Court-Authorized Notice of the Collective Action, who failed to submit a timely Consent to Join Form during the opt-in period ending on June 15, 2024, and who did not work at Defendant's Westchester Medical Center location in a Security Officer position or its LaGuardia airport or JFK airport locations in the baggage handler, and/or wheelchair pusher positions, but who submits a Request to Participate in the settlement within one year of the date of the Court's approval of the settlement.  *Id.* § 1.34.

As discussed in the parties' supplemental briefing in support of the Motion for Preliminary

Approval, the three settlement groups reflect the varying duties that Class and Collective

Members have at Prosegur locations across New York and the evidence unifying Prosegur's

---

[1]    All capitalized terms used in this Brief are defined in the Settlement Agreement and Release attached to the Brooks Decl. as Exhibit 1.
[2]    As Plaintiffs explained in their First Supplemental MOL, the Court has the authority to alter the class definition to be broader than the definition alleged in the Complaint.  *See* ECF No. 72 at 9-16.

security workers at Westchester Medical Center ("WMC") and the wheelchair pusher and

backage handlers at LaGuardia and JFK airports, as well as the risks associated with each

group's claims.   *See* ECF No. 72 at 1-9; ECF No. 75 at 1-9.

## II.    Monetary Settlement Terms

Prosegur has agreed to pay a Gross Settlement Amount of $2,500,000 into a Settlement

Fund.  *Id.* § 1.19.  This amount includes payments to Participating Class and Collective

Members; employee tax withholdings; Court-approved service awards to the Named Plaintiffs;

Court-approved attorneys' fees and costs; and costs of Settlement administration.  *Id.*

The Gross Settlement fund will be allocated as follows:

a.  $1,900,000 of the Gross Settlement Amount will be allocated to the Class Fund
    and settlement payments to Participating Class Members will be paid from this
    fund.  If the number of Class Members exceeds 1,300 by 5% or more, Defendant
    shall be required to contribute an additional amount to the Class Fund
    proportionate to the increase in Class Members.  *Id.* §§ 1.5; 3.1(A)(i).

b.  $500,000 of the Gross Settlement Amount will be allocated to the Collective
    Fund and settlement payments for Participating Additional Collective Members
    will be paid from this fund.  *Id.* §§ 1.10; 3.1(A)(ii).

c.  $100,000 of the Gross Settlement Amount will be allocated to the Reserve Fund
    and settlement payments to Participating Outstanding Collective Members will
    be paid from this fund.  *Id.* §§ 1.51; 3.1(A)(iii).  If a number of Outstanding
    Collective Members submit Requests to Participate such that there are no funds
    remaining in the Reserve Fund, Defendant will have the option to contribute an
    additional amount to the Reserve Fund proportionate to the increase in
    Outstanding Collective Members.  *Id.* § 3.1(A)(iii).  If the Reserve Fund does not
    have sufficient funds remaining to pay all Outstanding Collective Members,
    Outstanding Collective Members who submit Request to Participate forms will
    receive Settlement Checks in the order that they submitted their Request to
    Participate Forms.  *Id.*

The Court-approved service awards to the Named Plaintiffs, Court-approved attorneys'

fees and costs, and costs of Settlement administration will be split proportionally between the

Class Fund, Collective Fund, and Reserve Fund.  *Id.* § 3.2(C).

As discussed in Plaintiffs' supplemental briefing on the Motion for Preliminary Approval, the allocation between the three groups reflects the risks associated with maintaining the Collective through Defendant's decertification motion and the risks of obtaining class certification.  *See* ECF No. 75 at 3-8, 9 n.4.  Because Prosegur's timekeeping and off-the-clock work policies tend to vary in the locations where Security Officers work across New York State, the risk of decertification of the statewide 216(b) Collective is considerable, and Additional Collective Members would have a substantially higher degree of risk in achieving recovery for their claims if litigation were to continue in the absence of a settlement.  *See* ECF No. 75 at 1-8. Unlike Collective Members, Class Members, who work either at Westchester Medical Center or airports, experienced consistent work conditions and policies, including doing a substantial amount of physical labor and being subjected to similar off-the-clock policies.  ECF No. 75 at 8-9; ECF No. 72 at 4-9.  Class Members' claims have similar strength on the merits and also would be well-suited for class certification.  ECF No. 75 at 9.  Additionally, as all Class and Collective Members already had the opportunity to choose to opt-in to the Litigation through the 216(b) notice process, the Reserve Fund will allow any Outstanding Collective Members who did not choose to opt-in prior to the 216(b) opt-in deadline an opportunity to still take part in the Settlement.  Brooks Decl. ¶ 21.

## III.    Allocation Plan

Under the Allocation Formula, Participating Class and Collective Members will be paid based on the number of workweeks they worked in the Relevant Period of January 6, 2020 through June 17, 2024 as related to Class Members and January 6, 2020 through December 31, 2023 as related to Additional Collective Members and Outstanding Collective Members.  Ex. 1 (Settlement Agreement) § 1.49.

Payments to Participating Class Members will be made from the Net Class Fund.

Settlement Agreement §§ 1.25; 3.4(A).  The Settlement Amount for each Participating Class

Member will be determined by the Settlement Administrator pursuant to a formula based on each

Class Member's length of employment during the time relative to the rest of the Class.  *Id.*

§ 3.4(A).  Each Class Member will receive a minimum payment of $100.  *Id.*  Payments to

Participating Outstanding Collective Members will be made from the Net Collective Fund based

on a similar formula, and each Additional Collective Member will receive a minimum payment

of $50.  *Id.* § 3.4(B).  Finally, payments to Participating Outstanding Collective Members will be

made from the Net Reserve Fund based on the value of shares received by Additional Collective

Members.  *Id.* § 3.4(C).

## IV.    Programmatic Relief

Prosegur has agreed to continue to pay its New York-based employees, including

Security Officers, baggage handlers, wheelchair pushers, and other similar roles, on a weekly

basis.  *Id.* § 5(A).  Additionally, Prosegur agrees to pay its employees for their paid time off

("PTO"), including sick time, vacation time, and any other paid leave, on the next scheduled pay

day the week after employees take the PTO day(s), on the same schedule as Defendant's weekly

pay schedule.  *Id.* § 5(B).  PTO days will be paid on the same schedule as if the PTO days were

regular paid workdays.  *Id.*

The Notice sent to Class and Collective Members alerted them of the Programmatic

Policy Changes and stated that they can contact Plaintiffs' Counsel if they identify Defendant's

noncompliance with the Programmatic Relief.  *Id.* § 5(C).  Prosegur has audited its compliance

with the Programmatic Policy Changes and has submitted a declaration affirming that it is in

compliance with the Programmatic Policy Changes.  *See* Ex. 7 (Declaration of Maria Bula).

## V.    Releases for Proposed Class Members

Each Class Member who did not submit a timely and valid Opt-Out Statement will become a Participating Class Member, and, upon the Court's entry of a Final Approval Order, will release Prosegur from claims that arose or accrued under the New York Labor Law during the applicable statute of limitations, and by negotiating a Settlement Check, Participating Class Members will release Prosegur from all FLSA claims that arose or accrued during the applicable statute of limitations.  Settlement Agreement §§ 1.47, 1.48, 4.1.  Additionally, by operation of negotiating a Settlement Check, Participating Additional Collective Members and Participating Outstanding Collective members will release Prosegur from claims that arose or accrued under the New York Labor Law and all FLSA claims that arose or accrued during the applicable statute of limitations.  *Id.* §§ 1.47; 1.48, 4.2.

## VI.   Attorneys' Fees and Costs and Service Awards

Under the Settlement Agreement, Plaintiffs' Counsel will request Court-approval of attorneys' fees in the amount of $833,333.33 (representing one-third of the Gross Settlement Fund), plus reimbursement of actual case-related costs and expenses.  *Id.* § 3.2(A).  The Settlement Agreement also provides that the Named Plaintiffs will apply to the Court at final approval to receive service awards in the amount of $10,000 each.  *Id.* §§ 1.52; 3.3(A).  Plaintiffs seek approval of attorneys' fees, costs, settlement administrator expenses, and Service Awards for the Named Plaintiffs in Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's Fees and Costs, filed concurrently with this Motion.  The Agreement is not conditioned on the approval of the service awards and provides that the "outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise

9

affect the Court's ruling on the Motion for Final Approval." *Id.* § 3.3(B).

## VII.   Notice of Settlement to Class Members

After the Court granted preliminary approval of the Settlement, ECF No. 77, including approval of Plaintiffs' proposed Notices, Claim Form, and Reminder Postcard, and approved ILYM Group, Inc. ("ILYM") as the Settlement Administrator, Class Counsel began coordinating with the Settlement Administrator to disseminate notice to the Class Members.  Brooks Decl. ¶ 24; Snow Decl. ¶¶ 3, 6-8.  On January 4, 2025, Prosegur provided a Class List to the Settlement Administrator reflecting the name, social security number, last known mailing address, last known telephone number, last known e-mail address, the work site, the employee ID, job title, location, and the dates of employment worked for Class Member and Additional Collective Member.  Snow Decl. ¶ 5.  The Class List contained data for 1,984 Class and Collective Members.  *Id.* ¶ 6.  The Settlement Administrator processed and updated the mailing addresses in the Class List utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  *Id.*  The Settlement Administrator created a settlement administration website at https://prosegurwagecase.com/.  *Id.* ¶ 7.  Prior to sending notice, the parties reviewed and approved the settlement administration website, notices, claim form, envelopes, and text message language.  Brooks Decl. ¶ 24.

On February 12, 2025, consistent with the terms of the Settlement Agreement, the Settlement Administrator sent the Court-approved Notices via email, text message, and U.S. mail to the Class and Collective Members.  Snow Decl. ¶ 8.  The Notices informed Additional Collective Members where and how to submit claims, and informed Class Members of their right to request exclusion from or object to the Settlement, and the implications of each such actions. Snow Decl. Ex. A.  The Notices also advised Class Members of applicable deadlines and other

events, including the Final Fairness Hearing, and how they could obtain additional information.

*Id*.  The Settlement Administrator mailed the Notices to 1,004 Class Members and 980

Additional Collective Members, emailed the Notices to 930 Class Members and 927 Collective

Members, and sent notice by text message to 1,000 Class Members and 898 Collective Members.

Snow Decl. ¶ 8.  The earliest Bar Date for Class and Collective Members for whom U.S. mail

notice was not undeliverable was 60 days, until April 14, 2025.[3]  *Id*. ¶¶ 14-15.  Due to a brief

delay in the production of the employee data necessary to distribute Notice, the latest Bar Date

for two potential settlement participants is May 15, 2025.  *Id*. ¶ 11.  There is one Class Member

and one Outstanding Collective Member with a Bar Date of May 15, 2025, and the Bar Date has

passed for all other Class and Collective Members.  *Id*.  Plaintiffs will submit a letter no later

than May 22, 2025 informing the Court if the Settlement Administrator receives any opt-outs or

objections from either of these two potential settlement participants after the Final Approval

hearing on May 14, 2025.  Brooks Decl. ¶ 27.

Of the 1,984 Notices sent to Class and Collective Members by U.S. mail, 150 Notices

were returned as undeliverable.  Snow Decl. ¶ 10.  Using an advanced address search, the

Settlement Administrator located 77 updated addresses and re-mailed the Notices accordingly,

and 8 were remailed to a forwarding address provided by USPS.  *Id*.  In all, 96.5% (or 969 of

1004) Class Members and 96.8% (or 949 of 980) Collective Members received notice by mail,

and 99.7% (or 1001 of 1004) Class Members and 100% of Collective Members received notice

by at least one method of approved notice (U.S. mail, email, or text message).  Brooks Decl. ¶

---

[3]    If notices mailed via U.S. mail were returned as undeliverable, and the Settlement
Administrator was able to locate an updated mailing address and re-mail the notice, the Bar Date
for that individual was either the original Bar Date or 30 days from the date of re-mailing,
whichever was later.  Settlement Agreement § 1.3.

24. The Settlement Administrator sent a Reminder Notice to Opt-in Class Members via email, text message, and U.S. mail on March 25, 2025. Snow Decl. ¶ 9.

In total, 100% of Class Members chose to participate in the Settlement (by not submitting an Opt-Out Statement) and 697 or 71.12% of Additional Collective Members submitted Claim Forms, for a combined participation rate of 85.73%. *Id*. ¶¶ 17, 19. Class Counsel responded to inquiries from more than 300 Class Members. Brooks Decl. ¶ 26. No Class Member opted out of the Settlement or objected to the Settlement. *Id.* ¶ 27.

The Settlement Administrator has received Request to Participate forms from 36 Outstanding Collective Members. Snow Decl. ¶ 18. If the Court grants final approval of the Settlement, the deadline for Outstanding Collective Members to Submit Request to Participate forms will be one year of the date of the Court's Final Approval Order, and the Settlement Administrator will distribute checks to Participating Outstanding Collective Members on a rolling basis. *Id.* § 2.9. If the Court grants final approval of the Settlement, the parties will proceed as follows. Within seven days of the Effective Date, Prosegur will pay the Gross Settlement Amount ($2,500,000) into a Qualified Settlement Fund, and within 14 days of the Funding Date, the Settlement Administrator will distribute checks to all Settlement Class Members. *Id.* §§ 1.18, 3.1(B), 3.1(C). They will have 120 days to cash their check. *Id.* §§ 1.7, 3.4(F). The Settlement Administrator will distribute a reminder postcard by e-mail, text message, and U.S. mail 30 days after the initial mailing of Settlement Checks. *Id.* §§ 1.8, 3.4(G). Any funds remaining in the Class Fund after the close of the Check-Cashing Period will be redistributed to Participating Class Members who cashed a Settlement Check on a pro rata basis, and any funds remaining in the Class Fund after the redistribution will revert to Defendant. *Id.* § 3.5(A). Any uncashed amounts in the Collective Fund and Reserve Fund remaining 18 months

12

after the date of the Court's approval of the Settlement will revert to Defendant.  *Id.* § 3.5(B).

## ARGUMENT

### I.    Judicial Policy Favors Settlement.

A court will approve a settlement if it is "fair, adequate, and reasonable, and not a product of collusion."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation and quotations omitted), *superseded by statute on other grounds as stated in Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).  Although "[t]he decision to grant or deny such approval lies squarely within the discretion of the trial court, . . . this discretion should be exercised in light of the general judicial policy favoring settlement."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).  Public policy considerations strongly favor settlement in class actions.  *Wal-Mart*, 396 F.3d at 116.

### II.    The Rule 23 Settlement Is Fair, Reasonable, and Adequate, and Should Be Approved in All Respects.

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate.  Fed. R. Civ. P. 23(e).  To determine procedural fairness, courts examine whether "the class representatives and class counsel have adequately represented the class," and whether "the proposal was negotiated at arm's length."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).  To determine substantive fairness, courts must consider whether "the relief provided for the class is adequate," considering specific factors enumerated in Rule 23(e)(2)(C), and whether "the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  To guide analysis of these requirements, courts consider the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  In making its fairness

13

determination, courts recognize the "unique ability of class and defense counsel to assess the potential risks and rewards of litigation. . . ." *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 U.S. Dist. LEXIS 65261, at \*6-7 (S.D.N.Y. May 7, 2015).

### A.    The Settlement Is Procedurally Fair.

To find a settlement procedurally fair, reviewing courts "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citation omitted); *superseded by statute on other grounds as stated in Moses*, 79 F.4th at 243; *see also* Fed. R. Civ. P. 23(e)(2)(B). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at \*12 (S.D.N.Y. July 27, 2007). Additionally, the court must determine whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P 23(e)(2)(B). "Determination of adequacy typically 'entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)).

Here, the settlement negotiations between the parties reflect a procedurally fair process. The negotiations were adversarial, involving two mediations, stopping and starting over the six months following the parties' second mediation session, and involving multiple follow-on calls, conferrals, and communications, including multiple settlement proposals. Brooks Decl. ¶¶ 13-

14

19.  Further, the settlement negotiations were facilitated by an experienced, neutral mediator, Anne Marie Estevez.  *Id.* ¶ 13.  The Named Plaintiffs were engaged in the settlement process over the course of the negotiations, including meeting with Class Counsel ahead of each mediation and remaining available for phone calls during each mediation session to discuss the status of the negotiations.  *Id.* ¶¶ 48-50.  Following each mediation, the Named Plaintiffs conferred with Class Counsel regarding settlement strategy and next steps.  *Id.*

At all times during this process, the parties' respective counsel argued and bargained vigorously on behalf of their clients.  *Id.* ¶ 38.  These arm's-length negotiations involved counsel well-versed in wage and hour and class action law, and "qualified, experienced and able to conduct the litigation."  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692.  Plaintiffs are represented by lawyers who are recognized as national leaders in complex employment matters, who have been appointed as class counsel and successfully prosecuted numerous class actions.  *See* Brooks Decl. ¶¶ 9, 67-68.  These experienced litigators have endorsed the Settlement.  The interests of Plaintiffs are not antagonistic to the Class: they suffered the same injuries and have an "interest in vigorously pursuing the claims of the class."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). [4]  The Court should affirm the procedural fairness of the Settlement.

**B.    The Settlement Is Substantively Fair.**

In *Grinnell*, the Second Circuit provided an analytical framework for evaluating the substantive fairness of a class action settlement.  495 F.2d at 448.  The *Grinnell* factors guide

---

[4]    Plaintiffs also respectfully direct the Court to their Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's Fees and Costs, filed concurrently with this Motion, which sets out Plaintiffs' efforts on behalf of the Class, and incorporate by reference the arguments therein.

district courts in making this determination. They are: (1) the complexity, expense, and likely

duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the

amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing

damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the

defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund

in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund

to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. In addition, Rule

23(e) directs the Court to consider whether "the relief provided for the class is adequate,"

considering specific factors overlapping with the *Grinnell* factors,[5] and whether "the proposal

treats class members equitably to each other." Fed. R. Civ. P. 23(e)(2)(C), (D).

Here, all *Grinnell* factors strongly weigh in favor of final settlement approval, as

addressed in Plaintiffs' Motion for Preliminary Approval and the Court's Preliminary Approval

Order. *See* ECF Nos. 163, 165. For the Court's convenience, Plaintiffs summarize those points

here, while expanding on *Grinnell* factor 2.

> ### i.    *Grinnell Factors 1, 3, 4, 5, 6, 7, 8 and 9.*

*Grinnell* factor 1 is satisfied because by reaching a favorable settlement before engaging

in additional, time-consuming discovery, briefing dispositive motions, and trying the case,

because Plaintiffs avoid significant expense and delay and ensure timely relief for the Class. *See*

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*

*sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are

---

[5]    Those factors are: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C).

inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."); Brooks Decl. ¶¶ 35-37.  *Grinnell* factor 3 is satisfied because the parties completed some discovery, including the exchange of detailed damages data, and thus had more than sufficient information to evaluate the strengths and potential weakness of their claims.  *See* ECF No. 69 at 13-14; *see also* Brooks Decl. ¶¶ 16, 18.

*Grinnell* factors 4 and 5, the risks of establishing liability and the risks of establishing damages, are satisfied because, although Plaintiffs believe their claims are meritorious, they also recognize the legal and procedural obstacles they would face in establishing liability and recovering damages at trial.  *See* ECF No. 69 at 14-15; *see also* Brooks Decl. ¶¶ 35-37.  As discussed in Plaintiffs' Supplemental Preliminary Approval briefing, the Class and the Collective face different risks to establishing liability for their claims, and the Settlement values their claims accordingly.  *See* ECF No. 72 at 9; ECF No. 75 at 1-9; *see also In re Holocaust Litig.*, 80 F. Supp. 2d at 177 ("[t]he court must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.").  Here, Plaintiffs recognize the substantial risks of the litigation, including the possibility that if this action is not settled now, it might not result in any recovery or might result in a recovery that is less favorable.

*Grinnell* factor 6 is satisfied because Prosegur would have an opportunity to oppose class certification, move to decertify the FLSA collective and any certified Rule 23 classes, move for summary judgment, and mount a vigorous defense at trial, and Settlement eliminates these risks. Brooks Decl. ¶ 36.  As to *Grinnell* factor 7, Prosegur's ability to withstand a greater judgment is a neutral factor, but the Settlement eliminates the risk that Plaintiffs and Settlement Class Members may not recover anything.  *See id.* ¶ 35.

17

As to *Grinnell* factors 8 and 9, related to the range of reasonableness of the Settlement fund in light of the potential recovery and the risks of continued litigation, these factors also weigh in favor of approval because the outcome negotiated by Class Counsel is significant in light of the risks of the continued litigation. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. Here, the Settlement provides for monetary compensation for every Participating Class Member from a fund of $1,900,000, Participating Outstanding Collective Members from a fund of $500,000, and Participating Additional Collective Members from a fund of $100,000. This is a substantial recovery for Class and Collective Members, particularly given the risks of litigation. These risks included the risk of losing class certification, having the collective action decertified, losing on the merits, and losing on appeal. *See also* ECF No. 72 at 16-20 (explaining the value of the settlement and the risks of continued litigation). Participating Class Members will receive an average payment of approximately $1,214, with the estimated highest gross payment being $3,083 and Participating Collective Members will receive an average payment of approximately $363.43, with the estimated highest payment being $643.80. Snow Decl. ¶ 22.

###### ii.        *Grinnell Factor 2.*

With respect to *Grinnell* factor 2, Plaintiffs can now apprise the Court that the Class's reaction is exceedingly positive. The Class Notice, which was sent to approximately 1,984 Class Members and 980 Collective Members, detailed the relief of the settlement, disclosed Class Counsel's fee request and the Named Plaintiffs' service award request, and provided clear instructions on how to exercise one's right to participate (Collective Members) or exclude oneself or object to the Settlement (Class Members). In response, as of the close of the

settlement notice period, no Class Members opted out and no Class Members objected.  Snow

Decl. ¶¶ 8, 14-15.  Further, 693 of 980 total Additional Collective Members have submitted

claim forms, a high response rate.  A number of Class and Collective Members affirmatively

reached out to Class Counsel and indicated their support.  Brooks Decl. ¶ 26.

"[T]the fact that the vast majority of class members neither objected nor opted out is a

strong indication" of the settlement's fairness.  *Wright v. Stern*, 553 F. Supp. 2d 337, 345

(S.D.N.Y. 2008); *see also Rodriguez v. It's Just Lunch Int'l*, No. 07 Civ. 09227, 2019 U.S. Dist.

LEXIS 228270, at *14 (S.D.N.Y. Mar. 2, 2020) ("[T]he extremely low number of objectors as a

percentage of the Classes strongly supports approval of the settlement."); *Seijas v. Republic of

Arg.*, No. 04 Civ. 400, 2017 U.S. Dist. LEXIS 64398, at *25 (S.D.N.Y. Apr. 27, 2017) ("The low

number of objectors supports settlement approval." (citing *Wal-Mart Stores, Inc.*, 396 F.3d at

118).

> ### iii.        *Rule 23(e)(2) Additional Considerations.*

The Settlement also meets the substantive requirements of Rule 23(e)(2) because the

monetary and non-monetary relief provided to the Class is more than adequate, and the Parties'

agreement treats Class Members equitably to each other.  *See* Fed. R. Civ. P. 23(e)(2)(C), (D).

*First*, the relief provided to the Class is fair and reasonable for the reasons discussed as to

*Grinnell* factors 1, 4, 5, and 6, especially considering "the costs, risks, and delay of trial and

appeal."  Fed. R. Civ. P. 23(e)(2)(C)(i).  The Settlement provides Class Members with a fair and

reasonable monetary recovery in exchange for a release covering the claims in the Litigation.

*Second*, the proposed method of distributing the relief to Class Members is effective, and

Class Members are "treat[ed] . . .  equitably relative to each other."  *See* Fed. R. Civ. P.

23(e)(2)(C)(ii), (D).  Participating Class and Collective Members' shares of the Settlement are

calculated based on the number of workweeks during the Relevant Period.  Settlement

Agreement § 3.4.

The method of processing claims was fair as well: the Settlement Administrator sent each

Class and Collective Member the Court-approved notice, including an estimate of each Class and

Collective Member's Settlement amount.  *Id.* Exs. A-D.  Class Members had 60 days from the

date of mailing (or 30 days from the date of any remailing) to object to or opt out of the

Settlement, Collective Members had 60 days from the date of mailing (or 30 days from the date

of any remailing) to submit a Claim Form, and the Settlement Administrator sent a Reminder

Postcard 30 days into the notice period.  *Id.* §§ 1.3, 2.7; Settlement Agreement Exs. F & G; Snow

Decl. ¶ 9.  Any additional funds left over from the Class Fund will be redistributed to Class

Members.  *Id.* § 3.5; Brooks Decl. ¶ 21; *see also Grinnell* factors 8 & 9.

*Third*, the relief is adequate because the terms of the proposed award of attorneys' fees,

including timing of payment, is reasonable.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed

further in Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's

Fees and Costs, Class Counsel's request for an attorneys' fee award amounting to one-third of

the total Settlement is a reasonable amount.  Class Counsel "create[d] a settlement fund for the

benefit of a class [and] are entitled to be compensated for their services," *Maley v. Del Global

Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002).  The "(1) the time and labor expended

by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ;

(4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public

policy considerations" all indicate that the fee request is reasonable and fair (again, as further

discussed in Plaintiffs' motion seeking attorneys' fees).  *Wal-Mart Stores, Inc.*, 396 F.3d at 121-

22 (quoting *Goldberger*, 209 F.3d at 50).  Class Counsel's request for attorneys' fees is to be

considered independently from the Court's consideration of "the fairness, reasonableness, and adequacy of the Settlement" and the outcome of the fee request will not have any effect on the Settlement. Settlement Agreement § 3.2(B).

*Fourth*, the agreement required to be identified under Rule 23(e)(3) (the Settlement Agreement) was made public on August 7, 2025, the date Plaintiffs filed for preliminary approval of the Settlement. ECF No. 70-1. Following the Court's grant of preliminary approval, the Settlement Agreement was available for viewing, downloading, and/or printing by Class Members on the Settlement website hosted by the Settlement Administrator. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv); *see also* Snow Decl. ¶ 7.

In sum, the *Grinnell* factors – including Plaintiffs' well-developed understanding of the strengths and weaknesses of the case and the significant risks, expense, and delay of further litigation – and a consideration of Rule 23(e)(2) conclusively support a finding that the Settlement is fair, adequate, and reasonable.

### C.    The Settlement Notice Satisfied Rule 23.

The Notices here, which the Court approved in granting preliminary approval, satisfied each of the Rule 23(c)(2)(B) requirements and complied with the procedures set forth in the Court's Preliminary Approval Order. ECF No. 77; *see also* Fed. R. Civ. P. 23(c)(2)(B). The Notice was written in plain language and organized and formatted to be as clear as possible. Fed. R. Civ. P. 23(e). It is based on the model notices provided by the Federal Judicial Center ("FJC").[6] *See Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2010 U.S. Dist. LEXIS 139132, at *4, *6 (S.D.N.Y. Dec. 22, 2010) (approving notice based on the FJC's model notices). The

---

[6]    *See* FJC, *Illustrative Forms of Class Action Notices: Notice Checklist and Plain Language Guide*, https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide (last visited August 3, 2023).

Notice included the Settlement's terms and the proposed attorneys' fees and costs; was sent with an individualized estimate of each Class Member's Settlement Share; explained how to opt out or object – or how to submit a Claim Form; and provided the date and time of the Fairness Hearing.  *See* ECF No. 163 (Settlement Agreement), Exs. A-G (Notices); *see also Soler v. Fresh Direct, LLC*, No. 20 Civ. 3431, 2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023), at *18-19 (approving similar notice).  This information was adequate to put Class Members on notice of the proposed settlement and satisfied the requirements of Rule 23(c)(2)(B).

Class Counsel's efforts to ensure that Class Members received notice of the proposed settlement have been exhaustive.  First, the Parties retained ILYM, an established firm specializing in class action settlement administration.  Brooks Decl. ¶ 23; Snow Decl. ¶¶ 2-3.  Before sending the Class Notice and Supplemental Notice, ILYM ran all addresses through the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  Snow Decl. ¶ 6.  ILYM then sent the Notice by U.S. Mail, e-mail, and text message to Class Members.  *Id.* ¶ 8.  For Notices returned as undeliverable, ILYM conducted an advanced address searched and remailed the notice if an updated address was found.  *Id.*  ¶¶ 10-12.  For the individuals for whom the Settlement Administrator was not able to locate an updated address, all but 3 of these individuals received notice by email or text message.  *Id.* ¶¶ 13.  As described above, the Class Notice reached approximately 1001 of 1004 Class Members and 100% of Additional Collective Members by one of the three methods.  *Id.*  In sum, the dissemination of the Class Notice complied fully with the Rule 23 requirements.

### D. Final Certification of the Settlement Class under Rule 23(b)(3) is Appropriate.

On December 30, 2024, the Court preliminarily approved the Settlement.  ECF No. 77.  In its Order, the Court found that Plaintiffs meet "all of the requirements for class certification

under Federal Rule of Civil Procedure 23(a) and (b)(3)" and provisionally certified the Class

under Fed. R. Civ. P. 23(e).  ECF No. 77 ¶¶ 4-5; *see also* ECF No. 69 at 18-23; ECF No. 72 at 9-

16.  The Court also appointed Outten & Golden LLP as Class Counsel pursuant to Fed. R. Civ.

P. 23(g).  ECF No. 77 ¶ 6.  Since that time, nothing has changed to alter the Court's provisional

ruling.  The Class definitions remain the same.[7]  Settlement Agreement § 1.3; Brooks Decl. ¶ 22.

Moreover, no Class Member has challenged the Court's finding that the elements of Rule 23 are

met for purposes of settlement class certification.  For these reasons, final certification of the

Settlement Class under Rule 23(b)(3) is appropriate.

## III.    The FLSA Settlement Should Be Approved.

The FLSA portion of the Settlement should also be approved as fair and reasonable.  For

Settlements that release FLSA claims, courts routinely employ a one-step approval process

because collective actions under 29 U.S.C. § 216(b) do not implicate the same due process

concerns as Rule 23 class actions.  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp.

3d 290, 304 (E.D.N.Y. 2015) (noting that "under the FLSA, parties may elect to opt in but a

failure to do so does not prevent them from bringing their own suits at a later date" (quoting

*Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 U.S. Dist. LEXIS 6069, at *22 (S.D.N.Y. May

1, 2014))); *see also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23

actions are fundamentally different from collective actions under the FLSA . . . .").  Accordingly,

courts do not apply the exacting standards for approval of a class action settlement under Rule 23

to FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y.

---

[7]      As Plaintiffs explained in their First Supplemental MOL, the Court has the authority to
alter the class definition to be broader than the definition alleged in the Complaint.  *See* ECF No.
72 at 9-16.

2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23.").

A.    **The Settlement Is Fair and Reasonable and Should Be Approved.**

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes, and regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Flores*, 104 F. Supp. 3d at 304-05 (quoting *Siler v. Landry's Seafood House – N.C., Inc.*, No. 13 Civ. 587, 2014 U.S. Dist. LEXIS 90088, at *19 (S.D.N.Y. June 30, 2014)). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Siler*, 2014 U.S. Dist. LEXIS 90088, at *19 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13.44 (5th ed. 2018) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."). To determine whether an FLSA settlement is "fair and reasonable," courts consider "the totality of the circumstances," including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel;' and (5) the possibility of fraud or collusion." *Chevalier v. Staffpro, Inc.*, No. 20 Civ. 7006, 2021 U.S. Dist. LEXIS 46965, at *1-2 (S.D.N.Y. Mar. 12, 2021) (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

The Settlement in this case meets the standard for approval. First, the Collective Fund of $500,000 is substantial, especially in light of the considerable risks Plaintiffs and the Participants

faced.  *See* Brooks Decl. ¶ 35.  Participating Collective Members will receive an average estimated gross payment of $363.43.  Snow Decl. ¶ 22.  Additionally, the Reserve Fund of $100,000 will allow any Outstanding Collective Members who did not choose to opt-in prior to the 216(b) opt-in deadline an opportunity to still take part in the Settlement, and their Settlement shares will be calculated at the same value per work week as Additional Collective Members. *Id.* ¶ 21; Settlement Agreement § 3.4(C).

The proposed allocation of the Settlement is also reasonable.  It reflects a proportion of damages owed to Participants based on the number of workweeks they worked for Prosegur during the Relevant Period, which is a reasonable approximation of each Participant's potential recovery.  Settlement Agreement § 3.4; *see, e.g.*, *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 U.S. Dist. LEXIS 72574, at *8-9, *47 (S.D.N.Y. May 23, 2014) (approving an allocation formula based in part on number of workweeks class members were employed during the class period).

Second, Plaintiffs faced significant litigation risks, including maintaining the FLSA Collective.  Brooks Decl. ¶ 36.  Prosegur would have aggressively pursued discovery from Plaintiffs and the FLSA Collective to demonstrate that they were not similarly situated with respect to their off the clock claims and would have moved to decertify the Collective.  *Id.*; *see also* ECF No. 1-8 (discussing the risks facing Collective Members' claims).  If Plaintiffs succeeded in opposing the motion, they would face significant risk during the dispositive motions phase and at trial.  *Id.* ¶ 37.  Even if Plaintiffs could maintain collective treatment through trial, at the damages phase, Plaintiffs would have to defeat Prosegur's arguments challenging the number of hours Plaintiffs are owed in unpaid wages, and that the fluctuating workweek applies to any damages calculations.  *Id.*; *See Banford v. Entergy Nuclear Operations,*

*Inc.*, 649 F. App'x 89, 90-93 (2d Cir. 2016). Plaintiffs have achieved a strong result by resolving the FLSA claims of individuals who opted into the lawsuit, as well as providing Outstanding Collective Members another chance to participate in the lawsuit.

Third, the Settlement was the result of more than a year and a half of litigation before the district court and substantial arm's-length negotiations between experienced counsel assisted by a private mediator Anne Marie Estevez, Esq. Brooks Decl. ¶¶ 13, 38; *see also, e.g., Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 U.S. Dist. LEXIS 139144, at *21 (S.D.N.Y. Dec. 21, 2010) (approving settlement that was result of "contested litigation and arm's length negotiation . . . [after] the parties engaged in a 19-hour mediation session with an experienced mediator"). Recognizing the uncertain legal and factual issues involved, the parties reached the Settlement pending before the Court only after attending multiple mediation sessions with an experienced neutral. Brooks Decl. ¶¶ 15-19.

Fourth, in addition to these reasons for approval, the Settlement complies with the Second Circuit's guidance in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The Settlement has been subject to this Court's judicial review and approval, and it does not contain any of the types of provisions that the Second Circuit found objectionable in *Cheeks*, such as overly restrictive confidentiality provisions, overbroad releases, or excessive attorneys' fees. *See id.* at 206-07.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Settlement.

Dated: May 7, 2025                     Respectfully submitted,
      New York, New York

/s/ Molly A. Brooks_____

Molly A. Brooks
**OUTTEN & GOLDEN LLP**
Molly A. Brooks
Michael C. Danna
Amy L. Maurer
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
mb@outtengolden.com
mdanna@outtengolden.com
amaurer@outtengolden.com

*Attorneys for Plaintiffs*
*and the Putative Classes and Collective*

27

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

I hereby certify that the foregoing Memorandum of Law In Support of Plaintiffs'

Unopposed Motion for Final Approval of Class and Collective Action Settlement complies with

Local Rule 7.1.  Plaintiffs' Memorandum of Law contains 8188 words as calculated by the word

processing system used to prepare the document.


By:  <u>/s/ Molly A. Brooks</u>
Molly A. Brooks

Dated: May 7, 2025
New York, NY