IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOE FRATTAROLA and LUCIANO CARBONE, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br> -against-<br><br>PROSEGUR SECURITY USA INC.,<br><br>       Defendant. | Case No. 7:23-cv-00137-CS |

**DECLARATION OF MOLLY A. BROOKS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SERVICE AWARDS AND CLASS COUNSEL'S FEES AND COSTS**

I, Molly Brooks, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as follows:

  1.  I am a partner at Outten & Golden LLP ("O&G") in New York, New York, which is Plaintiffs' Counsel herein. I submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class and Collective Action Settlement and Plaintiffs' Unopposed Motion for Approval of Service Awards and Class Counsel's Fees and Costs.

  2.  I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness at trial.

**My Background and Experience**

  3.  I received a Juris Doctor degree from Northeastern University School of Law in 2004. Since then, I have exclusively represented employees and unions in employment litigation and other employee rights matters.

  4.  I was admitted to the bar of the State of New York in 2005. I am also admitted to the bars of the United States District Courts for the Southern and Eastern Districts of New York,

and the U.S. Courts of Appeal for the Second and Ninth Circuits. I am a member in good standing of each of these bars.

5. From 2005 through 2008, I was associated with Cohen, Weiss and Simon LLP in New York, New York, where I represented employees and unions in labor and employment matters.

6. Since joining O&G in 2008, I have been engaged primarily in prosecuting wage and hour class and collective actions and class action discrimination cases.

7. I am a member of the National Employment Lawyers Association ("NELA") and its New York affiliate (NELA/NY). I have served as the Employee Chair of the American Bar Association's Labor and Employment Law Section Newsletter Committee and editor of the Newsletter, and on the New York City Bar Association's Labor and Employment Committee from 2009 to 2011.

8. I speak frequently on employment law issues, including wage and hour issues and discrimination issues. I have been a faculty member for continuing legal education programs focused on employment law sponsored by the American Bar Association, NELA, NELA/NY, and the New York City Bar Committee on Labor and Employment Law, among others.

9. O&G is experienced and nationally recognized for its expertise in litigating complex class and collective actions, including wage and hour cases like this one. *Id.*; *see also Capilupi v. People's United Fin., Inc.*, No. 15 Civ. 5247, 2018 U.S. Dist. LEXIS 167550, at *6-7 (E.D.N.Y. Sept. 27, 2018) (O&G attorneys "are well qualified, experienced, and have aggressively litigated this action, thereby demonstrating their adequacy as counsel for the class."); *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 637, 2015 U.S. Dist. LEXIS 15966, at *9 (E.D.N.Y. Feb. 9, 2015) ("O&G has substantial experience prosecuting and settling nationwide wage and hour class and collective actions, and are well-versed in wage and hour law and class

action law and are well-qualified to represent the interests of the class."); *Perez*, 2014 U.S. Dist. LEXIS 130214, at *69 (E.D.N.Y. Sept. 16, 2014) (appointing O&G as class counsel and noting that "O & G has the requisite experience in handling class actions . . . , are well versed in the applicable law, and have the resources necessary to represent the NYLL Class fairly and adequately"); *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 423 (S.D.N.Y. 2013) (appointing O&G as class counsel because it has "experience in handling class actions, sufficient knowledge of the pertinent law, and sufficient resources to commit to this representation"), *aff'd*, 602 F. App'x 3 (2d Cir. 2015); *Kelly v. Brooklyn Events Ctr., LLC*, No. 17 Civ. 4600, 2019 U.S. Dist. LEXIS 156295, at *4 (E.D.N.Y. Sept. 10, 2019) (O&G attorneys "are experienced class action and employment lawyers with good reputations among the class action and employment bars"); *Houser v. Pritzker*, 28 F. Supp. 3d 222, 248, 255 (S.D.N.Y. 2014) (appointing O&G class counsel in nationwide Title VII litigation and noting that O&G "bring[s] to the case a wealth of class action litigation experience").

**Overview of Investigation, Litigation, and Settlement Negotiations**

10. Prosegur Security USA Inc. ("Prosegur") is a privately-owned company that provides security services nationwide to many industries, including businesses focused on healthcare, construction, retail, and transportation. ECF No. 1 ¶ 1. Plaintiffs and the proposed Class members are current and former security officers ("Workers") who worked for Prosegur at various businesses in New York. *Id.* ¶¶ 6, 10. Prior to filing this Action, Class Counsel engaged in a substantial investigation that included a thorough investigation into Prosegur's compensation and timekeeping practices and interviews with multiple witnesses.

11. Plaintiffs allege that Prosegur violated the Fair Labor Standards Act ("FLSA) and the New York Labor Law ("NYLL") by (1) failing to pay Workers the full minimum wage required under the FLSA and NYLL; (2) failing to pay Workers for all regular and overtime

3

hours worked in violation of the FLSA and NYLL; and (3) failing to provide Workers with adequate wage notices and wage statements in violation of the NYLL. Prosegur denies these allegations.

12. Plaintiffs filed this class and collective action on behalf of themselves and other Workers on January 6, 2023. ECF No. 1. On January 31, 2024, Plaintiffs filed their Motion for Court-Authorized Notice Pursuant to Section 216(b) of the Fair Labor Standards Act. ECF No. 30. On March 7, 2024, the Court granted in part Plaintiffs' motion for Court-authorized notice pursuant to 29 U.S.C. § 216(b) and permitted notice to be sent to Workers who worked for Prosegur in New York since January 6, 2020. ECF No. 37. On April 16, 2024, Plaintiffs sent notice to 3,863 putative collective members and 1,344 individuals joined the case as Opt-in Plaintiffs ("Opt-in Plaintiffs") before the deadline of June 15, 2024.

13. After Plaintiffs filed their Complaint, Defendant's counsel reached out to Plaintiffs to propose that the parties consider attending mediation to explore an early resolution. Plaintiffs agreed, and the parties engaged Anne Marie Estevez, Esq., a well-respected mediator with significant experience involving employment law disputes. The parties requested and the Court granted a stay of discovery pending the mediation. ECF. No. 21.

14. Prior to the first mediation with Ms. Estevez, Prosegur produced a class list as well as pay and hours data for Class Members who worked for Prosegur at Westchester Medical Center.

15. The parties attended a mediation on June 26, 2023, but were unable to come to an agreement at that time.

16. Following the June 2023 mediation, the Court lifted the discovery stay and the parties commenced discovery. Plaintiffs served initial disclosures on September 21, 2023, and

4

on September 29, 2023, the parties each served their first sets of Requests for Production of Documents and Interrogatories and Defendant served its initial disclosures.

17. In October 2023, the parties agreed to attend a second mediation session with Ms. Estevez. On November 13, 2023, the parties attended a second mediation session with Ms. Estevez. While the parties were unable to come to an agreement at the time, Plaintiffs' Counsel and Defendant's Counsel continued to negotiate in the subsequent months.

18. Following the mediation, Plaintiffs responded to Defendant's discovery requests on December 13, 2023 and produced responsive documents on a rolling basis. Defendant served responses on December 22, 2023 and made an initial document production. Plaintiffs raised certain discovery disputes to the Court's attention, and the Court ordered Prosegur to timely complete its document searches and productions at the conference on March 8, 2024, and extended the discovery scheduled to accomplish that production and complete depositions. ECF No. 40.

19. The parties continued to negotiate a potential settlement throughout the first half of 2024, ultimately coming to an agreement on the terms of the Settlement on June 17, 2024. *See* Exhibit 1 (Settlement Agreement and Release ("Settlement Agreement")). The parties then negotiated the Settlement Agreement and Release and fully executed the Agreement on August 7, 2024. In other words, only after two mediation sessions and extended follow-on negotiations did the parties finally have an agreement in principle, and it was nearly two additional months until the parties negotiated and executed the long-form agreement. Throughout the entire process, the parties met and conferred (via telephone and email) with the mediator to facilitate the settlement discussions.

**The Settlement**

20. The Settlement Agreement follows an extensive pre-suit investigation, formal discovery, and substantial arm's-length negotiations before, during, and after a private mediation session.

21. Prosegur has agreed to pay a Maximum Total Amount of $2,500,000 into a Settlement Fund. Ex. 1 § 1.19.  This total includes payments to Participating Class Members; employee tax withholdings; employer payroll taxes; Court-approved service awards to the Named Plaintiffs; Court-approved attorneys' fees and costs; and costs of settlement administration. *Id*.  Any funds remaining in the Class Fund after the close of the Check-Cashing Period will be redistributed to Participating Class Members who cashed a Settlement Check on a pro rata basis, and any funds remaining in the Class Fund after the redistribution will revert to Defendant. *Id.* § 3.5(A).  Any uncashed amounts in the Collective Fund and Reserve Fund remaining 18 months after the date of the Court's approval of the Settlement will revert to Defendant. *Id.* § 3.5(B).  The Reserve Fund will allow any Outstanding Collective Members who did not choose to opt-in prior to the 216(b) opt-in deadline an opportunity to still take part in the Settlement.

22. The Class definitions remain the same as those in the Preliminary Approval Motion.  All Participating Class Members are receiving settlement payments according to an equitable allocation formula based on class definition and number of workweeks, as part of a Settlement of a protracted litigation with significant risk to any recovery at all.

**Notice of Settlement to Class Members**

23. Plaintiffs' Counsel selected ILYM Group, Inc. as a Settlement Administrator. ILYM's fee is $19,950.

24. After the Court granted preliminary approval of the Settlement, ECF No. 77, including approval of Plaintiffs' proposed Notices, Claim Form, and Reminder Postcard, and

approved ILYM Group, Inc. ("ILYM") as the Settlement Administrator, Class Counsel began coordinating with the Settlement Administrator to disseminate notice to the Class Members. Prior to sending notice, the parties reviewed and approved the settlement administration website, notices, claim form, envelopes, settlement administrator script for answering questions for Class Members, and text message language.

25. In all, 96.5% (or 969) Class Members and 96.8% (or 949) Collective Members received notice by mail, and 99.7% (or 1001) Class Members and 100% of Collective Members received notice by at least one method of approved notice (U.S. mail, email, or text message).

26. During the settlement notice period, Class Counsel responded to inquiries from more than 300 Class Members regarding the Settlement. A number of Class Members affirmatively reached out to Class Counsel confirming the information in the settlement notice regarding how to participate in the settlement, indicating Class Members' enthusiastic support.

27. As of the date of this submission, no Class Member opted out of the Settlement or objected to the settlement. Plaintiffs will submit a letter no later than May 22, 2025 informing the Court if the Settlement Administrator receives any opt-outs or objections from either of two potential settlement participants after the Final Approval hearing on May 14, 2025.

**Final Settlement Approval of the Rule 23 Settlement is Warranted**

28. At all times during the parties' settlement negotiations, the parties' respective counsel argued and bargained vigorously on behalf of their clients. Prosegur mounted a strong defense to the claims Plaintiffs asserted at every stage of the litigation.

29. The parties have already engaged in significant discovery over a period of several years and were set to embark on depositions of numerous opt-in Plaintiffs and corporate representative witnesses, as well as class certification, decertification, and summary judgment motion practice. If the Court denied summary judgment, a complex trial would have been

necessary to evaluate Prosegur's defenses to Plaintiffs' allegations, including the extent of off-the-clock and overtime work performed by Workers and the time Workers spent on different types of work. Preparing for trial, particularly a class trial, would have consumed tremendous amounts of time and resources. Additionally, any judgment would likely be appealed, thereby extending the duration of the litigation.

30. Plaintiffs faced risks in establishing liability and damages on a class basis. Prosegur likely would have argued that differences in timekeeping instructions among managers, as well as practices and job responsibilities among Workers, would prevent the class certification and would warrant decertification of the collective. In addition, even if Plaintiffs prevailed in obtaining class certification and in maintaining collective certification, the fact-intensive nature of Plaintiffs' off-the-clock and minimum wage claims involves risk at trial. *See, e.g.*, *Morris*, 859 F. Supp. 2d at 620 ("[T]he fact-intensive nature of Plaintiffs' off-the-clock claim presents risk. The proposed settlement eliminates this uncertainty."). Plaintiffs would have to establish the total amount of time Workers worked off the clock, the number of days of PTO that Prosegur failed to pay, and the amount of time Workers spent on physical tasks, all of which are complicated and fact intensive analyses.

31. Prosegur's ability to withstand a greater judgment is a neutral factor but the Settlement eliminates the risk that Plaintiffs and Settlement Class Members may not recover anything.

32. Participating Class Members will receive an average payment of approximately $1,214, with the estimated highest gross payment being $3,083 and Participating Collective Members will receive an average payment of approximately $363.43, with the estimated highest payment being $643.80. *See* Ex. 4 ¶ 22.

33. Individual class members have not expressed an interest in controlling the

prosecution of the action and Plaintiffs are not aware of any cases that have been brought against Defendant by class members on an individual basis or the same claims.

34. O&G has done substantial work identifying, investigating, negotiating, and settling Plaintiffs' and putative Class Members' claims.

**The FLSA Settlement Should Be Approved**

35. The Settlement in this case easily meets the standard for approval. The Collective Fund of $500,000, is substantial, especially in light of the considerable risks Plaintiffs and the Participating Class Members faced.

36. Plaintiffs faced significant risk to maintaining the FLSA Collective. Prosegur would have aggressively pursued discovery from Plaintiffs and the FLSA Collective to demonstrate that they – the Workers, or security guards, – were not similarly situated with respect to their wage claims, and would have moved to decertify the collective.

37. If Plaintiffs succeeded in opposing motion, they would face significant risk to surviving the dispositive motions phase and at trial. Even if Plaintiffs could maintain collective treatment through trial, at the damages phase Plaintiffs would have to defeat Prosegur's arguments challenging the number of hours Plaintiffs are owed in unpaid wages, and that the fluctuating workweek applies to any damages calculations.

38. The Settlement was the result of a year and a half of litigation before the district court and substantial arm's-length negotiations between experienced counsel assisted by a private mediator.

**Plaintiffs' Service Awards Should be Approved**

39. Named Plaintiffs Frattarola and Carbone made important contributions to the prosecution and fair resolution of this action on behalf of the Class over several years of litigation. Plaintiffs now request service awards in the amount of $10,000 each.

40. Both Named Plaintiffs were continuously involved in the prosecution of the case, including a pre-suit investigation and negotiation dating back to 2022.

41. They each brough particular value to the case and made important contributions.

42. Both Named Plaintiffs participated in multiple interviews during the investigation stage, to aid Class Counsel in assessing the claims, preparing the demand letter, conferring with counsel with Prosegur prior to filing the lawsuit, and eventually filing the complaint.

43. Each Named Plaintiff carefully considered whether to serve as class representative, with the understanding that their names would be on publicly filed court documents and that they would have the responsibility to make decisions in the best interest of the class.

44. Both Plaintiffs searched for and provided documents related to their employment with Prosegur early on in the litigation, and then conducted multiple rounds of additional searches once discovery began in earnest.

45. Each Named Plaintiff submitted a declaration in support of Plaintiffs' 216(b) motion and participated in additional interviews with Class Counsel while drafting the declarations.

46. The Named Plaintiffs spent a significant amount of time speaking with Class Counsel to allow them to gather information for the initial disclosures and Named Plaintiffs' interrogatory responses.

47. Each of the Named Plaintiffs prepared for a deposition and anticipated taking time off of work to be deposed.

48. Throughout the litigation, the Named Plaintiffs were involved in discussing strategy for each stage of the case.

49. During months of settlement negotiations, both individuals provided Class

Counsel with crucial factual information and consulted about settlement strategy.

50. They also were in frequent contact with Class Counsel as to the status of negotiations and next steps.

51. The Named Plaintiffs reviewed the Settlement Agreement with Class Counsel, and executed it.

52. Plaintiff Frattarola is still an employee of Prosegur and faced a continued risk of retaliation for participating in this lawsuit against his employer. Although only one of the Named Plaintiffs was still Prosegur's employee when they participated in this case, both nevertheless faced the risk that their current or future employers might discriminate or retaliate against them for being involved in this case if and when they learned of their involvement in the lawsuit, which has been on the public record since January 2023.

**Class Counsel's Fees and Costs Should be Approved**

53. Class Counsel's fees and costs request is fair and reasonable. The requested attorneys' fees represent approximately one-third of the monetary settlement for the Class.

54. Outten & Golden LLP ("O&G"), as Class Counsel, has been without compensation, and its entitlement to payment has been wholly contingent upon achieving a good result. Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a contingent basis in the face of significant risk. Due to the contingent nature of the customary fee arrangement, lawyers make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in this case if it was unsuccessful.

55. This is the percentage to which the Named Plaintiffs agreed in their retainer agreements if the case was settled on a collective or individual basis and is in line with attorneys' fees awarded in this Circuit for employment cases.

56. Class Counsel have spent approximately 1,977 attorney, paralegal, and support staff hours investigating, litigating, and negotiating the settlement of this case. These hours are more than reasonable for a case like this one and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff working on the case.

57. Multiplying these hours by the hourly rate of each attorney, paralegal, and staff member results in a lodestar amount of $ 1,346,327.50. The requested fee represents approximately 62% of Class Counsel's actual lodestar to date.

58. Class Members were apprised of this request for service awards and attorneys' fees and costs in the Court-approved Notices of Settlement ("Notices"), and no Class Member objected to these aspects of the Settlement.

59. Class Counsel's requested fee of $833,333.33 represents approximately 62% of its actual lodestar to date – a negative multiplier.

60. Class Counsel's hourly rates are reasonable. Courts in this Circuit have repeatedly approved hourly rates like Class Counsel's as reasonable. Further, the rates sought by Class Counsel are routinely paid by clients seeking hourly attorney work, including on wage and hour matters.

61. At all times, Class Counsel used a small team of core attorneys in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively. In addition, Class Counsel's *de minimis* time billed by attorneys and staff who had little participation in the action, was removed (for example, Class Counsel proactively removed any attorneys or staff who worked fewer than ten hours on this matter).

62. As outlined above and in attached Exhibits, Class Counsel's time was spent on tasks necessary to the successful prosecution of this wage and hour class action.

12

63. Plaintiffs vigorously prosecuted this action, by filing an early 216(b) motion; overseeing the opt-in notice administration, during which more than 1,000 individuals joined the case; engaging in extensive ESI negotiations; preparing the depositions of the Named Plaintiffs; reviewing documents; collecting documents and interrogatory responses from Opt-in Plaintiffs, fielding hundreds of inquiries from class members over the duration of the case, preparing for two mediations; negotiating the term sheet and long-form settlement agreement.  Thereafter, Class Counsel spent significant time working to secure preliminary approval of the settlement, including two supplemental briefs, and supervising the notice process.

64. The requested fee, however, is not based solely on time and effort already expended.  It is also meant to compensate Class Counsel for time that will be spent administering the settlement in the future.  In Class Counsel's experience, overseeing the final steps of the settlement process will require an ongoing substantial commitment.

65. Class Counsel anticipate that they will incur significant additional fees interacting with the settlement administrator and fielding Class Members' questions.

66. Class Counsel's lodestar will also grow as they continue to finalize the settlement process, prepare for the Fairness Hearing, and handle Class Member questions after approval.

67. The lawyers involved in negotiating the settlement collectively have decades of experience with wage and hour litigation and settlements, and all of that experience was brought to bear to achieve the results of this case.  Even so, Class Counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work.

68. The primary attorneys and staff who worked on this matter, besides myself, were:

    a. Michael C. Danna is a Partner at O&G in New York and a member of the firm's Class Action Practice Group.  Prior to joining the firm in 2017, Mr. Danna clerked for the Honorable Tanya S. Chutkan on the U.S. District Court for the

District of Columbia. He received his B.A. from Brown University and his J.D., *cum laude*, from New York University School of Law, where he was a Root-Tilden-Kern Public Interest Scholar.

b. Amy Maurer is an Associate at O&G in New York and a member of the firm's Class Action Practice Group. Prior to joining the firm in May 2021, Ms. Maurer was a fellow at the National Center for Law and Economic Justice. Ms. Maurer received her J.D. from Harvard Law School in 2019. She received her B.A. from Washington University in St. Louis in 2012.

c. Julio Sharp-Wasserman was an Associate at O&G in New York and a member of the firm's Class Action Practice Group until February 2024. Prior to joining the firm in 2021, he clerked for the Honorable Lawrence E. Kahn in the Northern District of New York. He received his B.A. from Pomona College in 2013 and J.D. from Columbia Law School in 2019.

d. Napoleon Zapata is a Paralegal at O&G. Prior to joining O&G in August of 2022, he worked as a paralegal at Vedder Price P.C. and graduated from Cornell University's ILR School in 2017 with a M.S. in Industrial and Labor Relations.

69. Here, Class Counsel respectfully posit that they achieved excellent results in this complex wage and hour matter, while risking the possibility of receiving nothing for their efforts. Cases for unpaid wages based on off-the-clock work are complex, fact-intensive cases that typically require a significant record to establish the propriety of class certification, liability, and damages.

70. This case is no exception, with nearly 2,000 putative Class and Additional Collective Members, and fact-intensive FLSA and NYLL claims involving the Prosegur's liability for work Class Members performed off-the-clock and for failing to pay class Members

on a weekly basis.

71. With respect to costs, Class Counsel's expenses were incidental and necessary to the representation of the class and are in line with costs charged to individual clients who pay out of pocket.

72. These expenses include the cost of administering 216(b) notice to potential collective members, mediation costs, legal research, maintaining a case website, fees for hosting client and discovery documents on Plaintiffs' document review platform, filing fees, attorney travel, postage, and printing.

73. The settlement administration activities already undertaken and those yet to be conducted (including the distribution of settlement checks) are necessary to effectuate this Settlement.

**Exhibits**

74. Attached hereto as **Exhibit 1** is a true and correct copy of the Settlement Agreement and Release.

75. Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiffs' Lodestar and Hours Summary Chart.

76. Attached hereto as **Exhibit 3** is a true and correct copy of Plaintiffs' Costs Summary Chart.

77. Attached hereto as **Exhibit 4** is a true and correct copy the Declaration of Makenna Snow of ILYM Group Inc.

78. Attached hereto as **Exhibit 5** is a true and correct copy of the Declaration of Joe Frattarola.

79. Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of Luciano Carbone.

80. Attached hereto as **Exhibit 7** is a true and correct copy of the Declaration of Maria Bula.

Dated: May 7, 2025
New York, New York

_____
Molly A. Brooks